**IN THE UNITED STATES BANKRUPTCY
COURT MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

FILED
U.S. Bankruptcy Court

AUG 25 2023

Middle District of Georgia

| | |
|---|---|
| **IN RE:**<br><br>**TERI G. GALARDI,**<br><br>        **Debtor.** | **CHAPTER 11**<br><br>**CASE NO.  22-50035-JPS** |
| **THOMAS T. MCCLENDON, AS<br>LIQUIDATING TRUSTEE FOR THE<br>GALARDI CREDITOR TRUST,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**JENISEE LONG, DUDLEY LAW, LLC,<br>THE LAW OFFICE OF ASTRID E.<br>GABBE, P.C.**<br><br>        **Defendants.** | **ADV. PROC. NO. 23-05017-JPS** |

**JENISEE LONG'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION, RES JUDICATA
AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**NOW COMES** DEFENDANT JENISEE LONG ("LONG") and files this motion to

dismiss because this Court lacks subject matter jurisdiction, COUNT II is barred by *res judicata*

and Plaintiff lacks standing to file an adversarial complaint against the Beneficial Owners of the

Liquidating Trust.

**BACKGROUND**

LONG is a Class 8 member and Beneficial Owner of a *pro rata* share of the Liquidating

Trust ("TRUST") evidenced by Allowed Claim #115. Mr. Thomas McClendon, the Ch. 11 Trustee

("TRUSTEE") has been ORDERED by this Court to distribute to LONG her *pro rata* share of the

TRUST as stated in the Confirmation Order (DOC 410), the corresponding Ch. 11 Plan (DOC

-1-

401) and the Trust Agreement (DOC 401 Exhibit "C") (collectively, "Plan Documents").[1]  As explained below there are mitigating reasons and extenuating circumstances that are preventing TRUSTEE from following the ORDERS of this Court and carrying out the Plan.  That would be prior to his appointment as TRUSTEE he entered into the practice of law with Ms. Astrid Gabbe ("GABBE") and Mr. Ainsworth Dudley ("DUDLEY") (collectively "Associates") with respect to several Trust Beneficiaries.[2]  At the same time TRUSTEE and DUDLEY were appoint to the creditor's committee.  LONG, GABBE and DUDLEY (collectively "DEFENDANTS") are, each, also Beneficiaries of the TRUST.  GABBE currently represents LONG in the case styled *Darden et al v. Fly Low, Inc. et al* (Case No. 20-cv-20592, S. Dist. of Fl).  GABBE and DUDLEY claim they are entitled to $53,737 from LONG'S *pro rata* share of trust assets.  LONG disputes this claim because she refused to sign the fee agreement after being requested to.

These facts have placed TRUSTEE is in an untenable position.  According to the allegations in his complaint GABBE and DUDLEY are threatening to hold him legally responsible for a debt LONG allegedly owes to Associates if he carries out the Plan and distributes to LONG her *pro rata* share of the TRUST (Compl. ¶ 29).  TRUSTEE attaches emails from Associates to the complaint that contain billing records for an arbitration case and a note from GABBE stating she is owed 35% from LONG'S *pro rata* share of ownership in the TRUST (even though LONG never signed any fee agreement with TRUSTEE, GABBE or DUDLEY).[3]

---

[1] The Plan has been substantially consummated.

[2] TRUSTEE, GABBE and DUDLEY attempted to obtain a conflict waiver from LONG through an attorney representation agreement.  She declined and did not sign the fee agreement. There is no contract or other agreement with TRUSTEE and/or Associates to pay attorney fees and/or a contingency fee.

[3] It is, of course, entirely possible Mr. McClendon, individually, is legally responsible for the purported lien based on an undisclosed side agreement between himself, GABBE and DUDLEY.  This can, in no way, be imputed to LONG.

TRUSTEE maintains that he is exposed to multiple liability if he follows the ORDERS of this Court and carries out the Plan but it is equally true he has a legal duty to carry out the Plan (11 U.S. Code § 1142) (*See* Plan Documents, generally). Similarly, TRUSTEE, has a legal duty to represent the interests of TRUST Beneficiaries (LONG, GABBE and DUDLEY).[4] TRUSTEE, faced with the proposition of being sued by his Associates and co-counsel for carrying out the Plan, alternatively, being sued by LONG for not carrying out the Plan, appears to have taken the middle road approach in a misguided attempt to extract himself from this impossible situation and wash his hands of this 4-way conflict. The main problem with the chosen course of action is that TRUSTEE has numerous tools at his disposal he can use to block Associates implied threats of litigation that are preventing him for carrying out the Plan.[5] First, TRUSTEE is an "Exculpated Person" as defined in the Plan and immune for all liability while carrying out the Plan. Second, TRUSTEE is shielded by the automatic stay and, again, immune from threats from his Associates and even immune from legal process.[6] Third, the Court ORDERED a permanent injunction in the Confirmation Order to prevent any person or entity (GABBE and DUDLEY) from interfering with TRUSTEE carrying out the Plan. Fourth, TRUSTEE in indemnified from all alleged liability in the complaint (*See* Trust Agreement Section 7.3 a. <u>Limitation of Liability</u>, pg. 12 and <u>Indemnification</u>, pg. 13). The fact he has, so far, chosen not to use any of the tools at his disposal

---

[4] Trust Agreement (xi) To represent the interests of the Beneficiaries with respect to any matters relating to the Plan, this Trust Agreement, or the Creditors Trust affecting the rights of such Beneficiaries (Trust Agreement, pg. 7).

[5] The email attachments to the complaint do not show any threat of litigation or explain what the consequences will be if TRUSTEE carries out the Plan and distributes to LONG her *pro rata* share of the Trust. Based on the allegations in the complaint TRUSTEE clearly <u>fears</u> Associates will sue him if he fulfills his legal obligations under the Plan and Trust Agreement.

[6] Attempting to sue TRUSTEE to collect a debt allegedly, first, owed by LONG then charged to TRUSTEE violates the automatic stay and permanent injunction. The entire lawsuit is void *ab initio*.

does not create a federal case or controversy when none actually exists. For these reason and more discussed below this case is due to be dismissed in its entirety.

### a.   <u>THE COURT LACKS ARTICLE III JURISDICTION.</u>

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) is a challenge to the court's subject matter jurisdiction. See FRCP 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). "The party invoking federal jurisdiction bears the burden of establishing" the elements of standing, and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Generally, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. LONG makes a factual attack to the complaint showing the Court TRUSTEE has not been harmed in a way that can establish ARTICLE III standing. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. The court may consider matters outside the pleadings and the non-moving party does not have the Rule 12(b)(6) safeguard (See *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).[7] The motion is also not thereby converted into one for summary judgment. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (stating that court could not "have transformed the motion to dismiss into one for

---

[7] A facial challenge requires the Court to accept the allegations in the complaint as true when considering a motion to dismiss.

summary judgment" because "the question of jurisdiction is inappropriate for summary judgment").

Article III of the U.S. Constitution limits the federal judicial power solely to the resolution of "Cases" and "Controversies". For there to be a case or controversy under Article III, TRUSTEE must have a " 'personal stake' " in the case—in other words, standing. *Raines* v. *Byrd*, 521 U.S. 811, 819 (1997). To demonstrate his personal stake, TRUSTEE must be able to sufficiently answer the question: " 'What's it to you?' " Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983).

For the Trustee to satisfy Article III's standing requirements, he must show:

(1) he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2) the injury is fairly traceable to the challenged action of the defendant; and

(3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*(Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004))

The first and foremost of standing's three elements, and the only element that LONG takes issue with here, is that the TRUSTEE has <u>not</u> suffered "an injury in fact" concrete and particularized and (b) actual or imminent. TRUSTEE alleges in the complaint in ¶¶ 15-20 there is a dispute over a distribution of trust assets. In ¶ 21 TRUSTEE alleges "[I]n the Letter, Plaintiff proposed the following distributions: $26,035 to Defendant Long, and a one-time payment of $53,737 to Defendants Dudley Law, LLC and The Law Office of Astrid E. Gabbe, P.C.[8]   In ¶ 24 "[P]laintiff alleges that he "[i]s faced with competing, unresolved demands on the Distribution and

---

[8] See Exhibit A – letter dated July 19, 2023 informing LONG for the first time about a purported lien placed on her portion of Trust assets by TRUSTEES Associates DUDLEY and GABBE.

therefore brings this action." In ¶ 26 "[P]laintiff brings this count pursuant to Federal Rule of Bankruptcy Procedure 7022 and 28 U.S.C. § 1335." In ¶ 29 "[P]laintiff is exposed to multiple liability due to Defendants' competing claims." [9]

The crux of the TRUSTEE'S complaint is that he will face legal jeopardy if he carries out the Plan because Associates will sue him and enforce their email "lien" against him. On the other hand, if he does not carry out the Plan he will be sued by LONG for not distributing her *pro rata* share of the TRUST to her as he was ORDERED to by the Court. TRUSTEE'S bald conclusions of future liability he might incur from complying with the Plan do not factually establish a sufficient risk to support Article III standing. The reason for this is that TRUSTEE has absolutely no legal obligation in law or equity to pay attorney fees that LONG allegedly owes to GABBE and DUDLEY. This necessary means GABBE and DUDLEY have no claim against the TRUSTEE if he complies with the Plan. And of course GABBE and DUDLEY will <u>never</u> sue TRUSTEE, their co-counsel, in this Court or any other COURT to collect a debt allegedly owed by LONG.

TRUSTEE'S injury in fact must be "concrete"—that is, "real, and not abstract." *Spokeo, Inc.* v. *Robins* , 578 U. S. 330, 340, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) (internal quotation marks omitted); see *Susan B. Anthony List v. Driehaus* , 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) ; *Summers v. Earth Island Institute* , 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) ; *Lujan* , 504 U.S., at 560, 112 S.Ct. 2130 ; *Schlesinger v. Reservists Comm. to Stop the War* , 418 U.S. 208, 220–221, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). TRUSTEE feigning concern that GABBE and DUDLEY will sue him does not even come close to meeting the minimum standard for Article III standing. Respectfully, the Court should dismiss the entire case

---

[9] TRUSTEE had notice on Friday, April 28, 2023 that his Associate, DUDLEY, was asserting an email "lien" on LONG'S portion of trust assets. Coincidently this is the day the Confirmation Order became final and TRUSTEE'S first day on the job.

pursuant to FRCP 12(b)(1).

### b. **THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim is facially plausible when the plaintiff pleads sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." Boyle v. City of Pell City, 866 F.3d 1280, 1286 (11th Cir. 2017).

TRUSTEE'S allegations of multiple liability due to Defendants' competing claims fails to meet the pleading requirements set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Supreme Court explained the necessary pleading standard in Iqbal, where it considered a claim alleging that several high-ranking officials violated the First and Fifth Amendments by purposefully instituting a policy of discrimination that resulted in plaintiff's incarceration at a facility where the conditions of confinement were inadequate. 556 U.S. at 668–69. Iqbal explained that "[t]wo working principles underlie" Twombly: (1) courts need not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" and (2) only a complaint that states a plausible claim for relief with well pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss. Id. at 678–79. Taken together, Iqbal and Twombly require well-pleaded facts, not legal conclusions, Twombly, 550 U.S. at 570, that "plausibly give rise to an entitlement to relief," Iqbal, 556 U.S. at 679.

A review of the complaint shows the emails attached to the complaint are all benign in nature. LONG does not read the emails to be threats and note there is no coercive language used

attempting to enforce compliance with the emails. There is no promise of a lawsuit if the email "lien" is not complied with. Thus, no reasonable person in TRUSTEE'S position would believe he/she is in legal jeopardy or that his co-counsels and Trust beneficiaties GABBE and DUDLEY will sue him if he does not follow their lead and withhold trust funds from LONG as they instructed.

The district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls. Here, the allegation in the complaint alleging multiple liability due to Defendants' competing claims conflict with the attached exhibit therefore the exhibits override and control this conflict (See, e.g., Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir.2009) (citing cases). Respectfully the Court Should dismiss the case pursuant to Rule 12(b)(6).

## TRUSTEE ENJOYS BROAD IMMUNITY FROM LIABILITY

TRUSTEE also enjoys absolute immunity when distributing trust funds to Beneficiaries.

The Confirmation Order states:

> **ORDERED** that **this Order shall act as a permanent injunction against any Person**: (a) **commencing or continuing any action,** (b) employing any process, or (c) **any acting to collect, offset, or recover any Claim except as provided for in the Plan against:** (1) Debtor, (2) against any property of Debtor, (3) **the Galardi Creditors Trust,** or (4) **property conveyed to the Galardi Creditor's Trust. Such injunction shall survive the closure of this bankruptcy case and this Court shall retain jurisdiction to enforce such injunction.**

(Confirmation Order p.7)

"Claim" means "the term claim," as defined in Section 101(5) of the Bankruptcy Code, against the Debtor or in favor of the Debtor or the Estate against third parties (Plan, pg. 46). The

language is clear, any act to collect or recover any Claim against the Debtor (TRUSTEE is the successor in interest to Debtor, see Plan 4.3.2, *infra*) the Galardi Creditors Trust or property conveyed to the Galardi Creditor's Trust are barred by the permanent injunction.

The Plan also states the injunction is still in effect:

### 8.5 Continuation of Pre-Confirmation Injunction or Stays.

All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Bankruptcy Case pursuant to Sections 105, 362, or 525 of the Bankruptcy Code or otherwise that are in effect on the Confirmation Date or imposed by the Confirmation Order shall remain in full force and effect until the Final Decree.

Plan pg. 34

TRUSTEE is an Exculpated Person because he is the successor and/or assignee of the Debtor as provided for in the Plan:

### 4.3.2 Transfers to the Creditors Trust

Subject to the terms of the Plan and the Trust Agreement, the Galardi Creditors Trust and the **Liquidating Trustee shall, on the Effective Date, be vested with and succeed to all rights, privileges, immunities, title, and interest of the Debtor** in and to the Trust Assets ... .

Plan pg. 25

### 10.10 Successors and Assigns.

The rights, benefits, and obligations of **any Person** or Entity named or referred to in the Plan shall be binding on, and **shall inure to the benefit** of, the heirs, executors, administrators, **successors, and/or assigns of such Entities**.

Plan pg. 39

### Trust Agreement 3.7 Title

On the Effective Date, legal title to the Trust Assets shall be vested in the Creditors Trust in accordance with and pursuant to the terms of the Plan and this Trust Agreement. Without limiting the foregoing, on the Effective Date, **the Liquidating Trustee, on behalf of the Creditors Trust, shall be authorized to act as representative of the Debtor's Estate in respect of any and all Class 8 Unsecured Claims and be substituted as successor to Debtor and Reorganized Debtor** in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court or elsewhere in regarding any disputes over the allowance of an Unsecured Claim.

Trust Agreement, pg. 5

Whereas TRUSTEE is the successor in interest and/or assignee of the Debtor he is covered by the exculpation language below. The language is broad enough to cover all the allegations in the complaint that TRUSTEE alleged any type of liability or potential liability that he may incur from complying with the terms of the Plan.

> **8.3 Exculpation and Limitation of Liability**.
>
> The **Debtor**, the Reorganized Debtor, the Committee and each of their respective members, affiliates, officers, directors, agents, attorneys, and employees (including Professionals) (collectively, the "Exculpated Persons") **shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken by any Exculpated Person in connection with or related to the formulation, negotiation, preparation, dissemination, implementation, administration, Confirmation, or consummation of this Plan,** the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan (except for any obligations of the Reorganized Debtor or the Estate arising under this Plan or in the Ordinary Course of Business). Except for obligations arising under this Plan on or after its Effective Date, **the Exculpated Persons shall have no liability to any Debtor, holder of a Claim, holder of an Interest, other party in interest in the Bankruptcy Case, or any other Person for actions taken or not taken under this Plan, in connection herewith or with respect hereto, or arising out of their administration of this Plan or the property to be distributed under this Plan,** including failure to obtain Confirmation of this Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or with respect to the Bankruptcy Case. Provided, however, that the foregoing provisions of this paragraph shall have no effect on the liability of any Exculpated Person that results from any such act or omission that is determined in a Final Order to have constituted fraud or other willful misconduct.
>
> Plan pg. 34

The Trust Agreement Section 3.1 <u>No Transfer or Exchange</u> plainly states **Beneficial Interests in the Creditor Trust shall not be transferable... .** (Trust Agreement, pg. 4) (TRUSTEE only authorized to distribute to beneficial owners their *pro rata* share of TRUST). Trust Agreement Section 7.3 a. <u>Limitation of Liability</u> limits the liability of TRUSTEE except in

the case of gross negligence or willful misconduct (Trust Agreement, pg. 12).   Section 7.6 Indemnification also insulates TRUSTEE from all alleged liability in the complaint (Trust Agreement, pg. 13).

Notwithstanding TRUSTEE'S perceived threats of litigation from his Associates the Plan Documents reveal TRUSTEE has no legal liability, whatsoever, when carrying out the Plan.  As a direct consequence of this there is no case or controversy.  Accordingly, The Court should dismiss the entire case pursuant to Rule 12(b)(6).

### c.   TRUSTEE DID NOT FILE AN INTERPLEADER PURSUANT TO 28 U.S.C. § 1335.

TRUSTEE alleges in ¶ 26 "[P]laintiff brings this count pursuant to Federal Rule of Bankruptcy Procedure 7022 and 28 U.S.C. § 1335."  The statute clearly says the district court shall have jurisdiction only if three conditions are satisfied at the time of filing the action.

> **28 U.S. Code § 1335 - Interpleader**
>
> **(a)The district courts shall have original jurisdiction of any civil action of interpleader** or in the nature of interpleader filed by any person, firm, or corporation, association, or society **having in his or its custody or possession money or property of the value of $500 or more,** or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, **if**
>
> **(1)Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property,** or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; **and** if **(2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court,** there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

When analyzing a statute the Court should begin with the text of the statute. See *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1335 creates federal court jurisdiction of interpleader actions only if three conditions are met. Subsection (a) required the stake to be at least $500. That was satisfied with the TRUSTEE alleging a dispute over $53,737 in ¶ 21. Subsection (a)(1) specifies minimal diversity among claimants. That was satisfied with the TRUSTEE alleging residency in Georgia (¶ 4), LONG a resident of Kentucky (¶ 5) and GABBE a resident of Florida (¶ 7). Subsection (a)(2) requires the stakeholder (TRUSTEE) to deposit the stake (in this case U.S. currency) in the district court's registry. That condition was not satisfied depriving the Court of jurisdiction under 28 U.S.C. § 1335 (compare FRCP 22 allowing interpleader <u>without</u> deposit but subject to 28 U.S. Code § 1332 and $75,000 minimum amount in controversy).

The statute, as written, is unambiguous. The 11th Circuit follows the interpretation of the text by the ordinary-meaning canon, "the most fundamental semantic rule of interpretation". ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 6, at 69 (2012). The word "and" in section 1335(a)(1) is used in the normal context so the Court should consider the ordinary meaning of that word when construing the statute. "And" means "along with or together with."[10] This means when "and" is used to connect a list of requirements, the word ordinarily has a "conjunctive" sense, meaning that all the requirements must be met. See *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1620– 21 (2021). For example, if a statute provides, "You must do A, B, and C," it is not enough to do only A, only B, or only C; "all three things are required"—A, together with B, together with C. See SCALIA & GARNER, supra, § 12, at 116. TRUSTEE met the requirements of A and B but did

---

[10] And, WEBSTER'S THIRD NEW INT'L DICTIONARY (1993).

not accomplish C and deposit the stake into the registry of the court. As the 7th circuit court of appeals explained, jurisdiction does not exist based on mere "promises to pay rather than contemporaneous deposits." *State Farm Life Ins. Co.*, 775 F.3d at 869. Rather, § 1335(a)(2) "requires cash on the barrel-head." *Id*. The Court must dismiss COUNT I if it determines that it lacks subject matter jurisdiction to proceed. *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir.1984). Accordingly, The Court should dismiss COUNT I pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

### d. COUNT II IS BARRED BY RES JUDICATA.

TRUSTEE alleges in ¶ 35 "[F]ederal Rule of Bankruptcy Procedure 700(1)(2)[sic] provides for an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property." In ¶ 36 he alleges "[P]laintiff requests the Court make a determination as to the validity, priority, or extent of each Defendants' claims to the Distribution."

It is black letter law that a confirmation order satisfies "the requirements of a judgment that can be given [preclusive] effect." *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.1990).

> 11 U.S. Code § 1142 - Implementation of plan
> **(a)**Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and **any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.**

> 4.3.1 Duties and Powers of the Liquidating Trustee (Plan pg. 25)
> Except as explicitly provided in the Plan, the Debtor nor the Reorganized Debtor shall have any liability for any cost or expense of the Galardi Creditors Trust following the Effective Date. **The Liquidating Trustee shall distribute the Trust Proceeds in accordance with the Trust Agreement and the terms of the Plan.**

> 11 U.S. Code § 1141 - Effect of confirmation
> **(a)** Except as provided in subsections (d)(2) and (d)(3) of this section, **the provisions of a confirmed plan bind the debtor, any entity issuing securities**

under the plan, any entity acquiring property under the plan, and any
creditor, equity security holder, or general partner in the debtor, whether or not
the claim or interest of such creditor, equity security holder, or general partner
is impaired under the plan and whether or not such creditor, equity security
holder, or general partner has accepted the plan.

Plan 8.4 Terms Binding.
**Upon the entry of the Confirmation Order, all provisions of this Plan,
including all agreements, instruments, and other documents filed in
connection with this Plan and executed by the Debtor or the Reorganized
Debtor in connection with this Plan, shall be binding upon the Reorganized
Debtor, all Claim holders, and all other Persons that are affected in any
manner by this Plan. All agreements, instruments, and other documents
filed in connection with this Plan shall have full force and effect and shall
bind all parties thereto as of the entry of the Confirmation Order,** whether
or not such exhibits actually shall be executed by parties other than the Debtor
or the Reorganized Debtor, or shall be issued, delivered, or recorded on the
Effective Date or thereafter.

Confirmation Order, pg. 6
**ORDERED** that the Plan is *confirmed* pursuant to 11 U.S.C. §1129. **All
provisions of the Plan shall bind Debtor, entities receiving property under
the Plan, and creditors** whether or not the claims of such creditors are impaired
under the Plan and whether or not such creditors have accepted the Plan... .

GABBE and DUDLEY are also creditors and now beneficial owners of the TRUST that

were each served with the Plan and had an opportunity to object before confirmation and failed to

do so. Associates never contested the LONG proof claim and it passed through confirmation

unchallenged. The terms of confirmed Plan were plain on their face and any objection to them

could have been raised by Associates at the time of confirmation (*Sure-Snap Corp. v. State St.

Bank & Trust Co.*, 948 F.2d 869, 873 (2d Cir. 1991) (If a party had adequate information about

claims before the petition date or during the chapter 11 plan process, the court concluded that the

existence of such information is evidence that the claims could have been raised during

confirmation).

See also *In re Newman*, 399 B.R. 541 (Bankr. M.D. Fla. 2008) ("Generally, the entry of an

order confirming a Chapter 11 plan binds the debtor and all creditors of the debtor ...."); *In re*

*Victory Markets, Inc.*, 221 B.R. 298, 303 (2d Cir. BAP 1998) ("[A] confirmed plan holds the status

of a binding contract as between the debtor and its creditors."); *In re Commercial Millwright Serv.*

*Corp*, 245 B.R. 585 (Bankr. N.D. Iowa 1998) ("Upon confirmation of the plan, all prior obligations

and rights of the parties are extinguished and replaced by the plan."); see also *In re Simpson*, 240

B.R. 559 (8th Cir. BAP 1999) (stating with regards to a Chapter 13 plan, "The confirmation order

established the rights between the debtor and the creditor and supersedes the terms of the original

contract between them.") (internal quotations omitted); *In re Siemers*, 205 B.R. 583 (Bankr. D.

Minn. 1997) (the terms of a Chapter 13 plan govern the post-confirmation treatment of creditors,

and if a creditor does not like its treatment under the terms of a proposed plan, the creditor's remedy

is to object to confirmation, not to ignore the plan and try to attack it later).

TRUSTEE'S request that this Court make another, <u>second</u>, determination as to the

validity, priority, or extent of each Defendants' claims to LONG'S *pro rata* share of trust assets is

*res judicata*.   The Court should dismiss Count II pursuant to FRCP 12(b)(6).

### e.   <u>TRUSTEE HAS NO AUTHORITY TO SUE TRUST BENEFICIARIES BECAUSE HE RECEIVED UNDISCLOSED EMAILS PURPORTING TO ASSERT A LIEN OVER TRUST ASSETS.</u>

<u>Section 6.3 No Implied Duties</u>
The Liquidating Trustee shall not manage, control, use, sell, dispose, collect,
or otherwise deal with the Trust Estate or otherwise take any action hereunder
except as expressly provided for herein, **and no implied duties or obligations
whatsoever of the Liquidating Trustee shall be read into this Trust
Agreement.** (Trust Agreement, pg. 12)

This is a very simple issue, TRUSTEE'S right are located in the Trust Agreement.  If the

Trust Agreement is silent on the issue or duty then <u>the right does not exist</u> (Section 6.3, *supra*). On

the other hand, if a duty is expressly provided for then the duty <u>must be carried out</u>.  There is no

language in Trust Agreement that expressly provide for what the TRUSTEE is to do when

confronted with an email that purports to assert a lien over trust assets.[11]  There is, however, express language in the Trust Agreement that TRUSTEE must comply with the Plan and distribute to LONG her *pro rata* share of the TRUST (Trust Agreement, 5.1 <u>Distribution to Beneficiaries</u>, pg. 9)  With respect to LONG'S claim #115 TRUSTEE'S options are limited, (i) he can carry out the Plan and distribute to LONG her *pro rata* share of the TRUST, (ii) assuming he has a legal basis, he can object to the proof of claim and (iii) he can negotiate a settlement that reduces LONG'S *pro rata* share but only *with her consent* (*See* Trust Agreement Section 4.4, pg. 8).[12] There are no other beneficial transfers permitted in this bankruptcy case (Trust Section 3.1, *supra*). Any attempt to transfer Trust assets earmarked from LONG to any person or entity, *without her consent* is a violation of the Trust Agreement.  The Court should dismiss the case pursuant to FRCP 12(b)(6).

## CONCLUSION

TRUSTEE allowed his Associate and co-counsel DUDLEY to place a purported lien through email on LONG'S *pro rata* share of the TRUST on, literally, <u>his very first day on the job</u>. He then held the existence of the purported lien a closely guarded secret until he was ready to make a distribution to LONG (Exhibit "A").  Next, perhaps unexpectedly, LONG disclaimed all liability and refused to consent to the transfer of her beneficial interest to GABBE and DUDLEY. The fact that his Associates are now implicitly threatening to hold him legally liable if he carries out the Plan does not excuse him from carrying out the Plan.  To the extent the threats are actually true

---

[11] Clearly this is because the drafters of the Trust Agreement never contemplated a lien being placed over trust assets solely through email communication.

[12] TRUSTEE tried #3 and that failed, there is no legal basis to object to the proof of claim so that leaves only #1 remaining, comply with the Plan and distribute to LONG her *pro rata* share of the Liquidating Trust.

then TRUSTEE is the author of his own misfortune. As far as this case is concerned his subjective belief that his Associates GABBE and DUDLEY may, potentially or could sue him at some point in the future if he carries out the Plan is insufficient to confer Article III jurisdiction on this Court. Moreover, under the facts of this case, TRUSTEE can never sufficiency allege ARTICLE III standing. The complaint also fails to state a claim upon which relief can be granted because TRUSTEE is immune from all liability while carrying out the terms of the Plan. Likewise, TRUSTEE failed to follow the interpleader statute, overlooked the binding effect of a Confirmation Order and Plan and has no authority to sue Trust Beneficiaries in an attempt to redivide the pie after the Plan has been substantially consummated. In the end the case should be dismissed in its entirety without leave to amend because it would be futile.

**WHEREFORE** LONG, respectfully, requests the Court enter an ORDER with substantially the following relief:

a.   Dismiss Count I pursuant to FRCP 12(b)(1) or (b)(6);

b.   Dismiss Count II pursuant to FRCP 12(b)(1) or (b)(6);

c.   Instruct TRUSTEE to immediately carry out the Plan and remit to LONG her *pro rata* share of the liquidating trust by certified mail;[13]

d.   for such other and further relief the Court deems equitable and necessary.

---

[13] Plan 6.10 Unclaimed Distributions**.** If any distribution on a Class 8 Unsecured Claim ("Unsecured Distribution") is tendered by the Liquidating Trustee to a Holder of a Class 8 Unsecured Claim and returned, refused or otherwise improperly returned **or otherwise not cashed for a period of 120 days** ("Unsecured Distribution Refusal"), **the Liquidating Trustee shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim and may stop payment on the check representing such distribution**. Accordingly, in the event of an Unsecured Distribution Refusal, the **Liquidating Trustee shall be relieved of any obligation to make said payment or distribution** and shall disburse the distribution pro rata to the other holders of Class 8 Unsecured Claims (Plan, pg. 30).

A fair reading of this section means that if the check is lost in the mail or stolen while in transit Class 8 creditors lose their entire distribution payment.

DATE:  August 22, 2023

Respectfully submitted,

*/s/ Jenisee Long*
Jenisee Long
2107 Center Street
Covington, KY 41014
longjenisee@gmail.com

# EXHIBIT "A"

## JONES & WALDEN LLC
### ATTORNEYS AT LAW

699 PIEDMONT AVENUE NE
ATLANTA, GA 30308
TELEPHONE (404) 564-9300
FACSIMILE (404) 564-9301
INTERNET www.joneswalden.com

July 19, 2023

*Via U.S. Priority Mail & Email*

Jenisee Long
2107 Center Street
Covington, KY 41014
longjenisee@gmail.com

> Re:   Teri G. Galardi, 22-50035
>       U.S. Bankruptcy Court, Middle District of Georgia

Dear Ms. Long,

As you likely know, Teri G. Galardi ("Ms. Galardi") filed a bankruptcy case on January 12, 2022, in the Middle District of Georgia (Macon, Georgia). As part of the bankruptcy case, a Committee of Unsecured Creditors (the "Committee") was appointed to represent the interests of all unsecured creditors. After negotiations, the Committee and Ms. Galardi filed a *Joint Plan of Reorganization*, which proposed to make payments of cash and property into a liquidating trust (the "Liquidating Trust") for the benefit of unsecured creditors (the "Plan"). This Plan was approved by the Bankruptcy Court on April 14, 2023. The same order also approved me as the trustee of the Liquidating Trust. The Plan became effective and final on April 28, 2023.

You filed a proof of claim asserting that you were an unsecured creditor of Ms. Galardi in the amount of $383,832.96. Pursuant to the Plan, Ms. Galardi has agreed to fund the Liquidating Trust with approximately $10 million of cash and property. As the Liquidating Trustee, I am tasked with selling the property and, after payment of operating expenses, distributing the funds to unsecured creditors.

This letter details the distributions I propose to make in the next few weeks. **Please know that this is not the only distribution I will be making. I will make additional distributions later.** In this round, I am distributing $5,000,000.00 to creditors pro-rata based on each creditor's percentage of claims out of the total of claims held. Because the total unsecured claims are $24,058,181.15, creditors are receiving a 20.78% distribution. **Again, I will have at least one**

**more distribution in a similar amount and, depending on future events, may have further distributions after that.**

You were represented by Ainsworth Dudley and Astrid Gabbe in the underlying arbitration. Based on the attachments to your proof of claim, I understand that you terminated both of them on March 17, 2022. I am informed by Mr. Dudley that he asserts a claim of lien on any distributions made to you. A copy of his invoice is enclosed with this letter. I am also informed by Ms. Gabbe that she claims a 35% contingency fee, which includes the hourly fees asserted by Mr. Dudley.

The amount to be paid on this claim in this distribution is $79,772. The amounts which I propose to pay are as follows:

| Recipient | Reason | Amount |
|---|---|---|
| Jenisee Long | Creditor | $26,035 |
| Ainsworth Dudley/Astrid Gabbe (one-time payment) | Legal Fees | $53,737 |
| **Total** | | **$79,772** |

For the other distributions, the full amount of the distribution payable for this claim would be paid to you. In other words, I estimate that there will be another distribution roughly equal to this one and that money would go entirely to you.

If you, Mr. Dudley, and Ms. Gabbe do not agree to the above amounts, and the three of you are otherwise unable to reach an agreement, I will need to file an adversary proceeding with the Bankruptcy Court to obtain a determination from the Court as to who is entitled to the above amount.

**I have not heard from you on your preferred method of payment.** Permissible methods include a wire transfer, a check mailed to the above address, or a check to be picked up at my office. Payment by wire will incur a wire fee, so the amount actually received may be slightly less than the amount listed above. Please let me know which one you prefer. If wire, I will need wire instructions and a contact to confirm those instructions by phone.

**In order to make this distribution, I would ask that you to execute this letter agreeing to the above distributions.** Signature blocks are immediately following my signature.

**In order to make this distribution, I will need an executed W-9 and a copy of your driver's license or other government-issued identification.** I have attached a blank W-9 for your convenience. Please provide this to me as soon as possible. You can email it to bdernus@joneswalden.com or you can mail it to Jones & Walden, LLC, Attn: Blake Dernus, 699 Piedmont Ave, NE, Atlanta, Georgia 30308.

Please let us know if you have any questions. I look forward to your response.

Sincerely,

Thomas T. McClendon, Esq.
Liquidating Trustee

TTM/bd
Enclosure

Agreed to by:

_____
Jenisee Long

Agreed to by:
DUDLEY LAW LLC

_____
By: Ainsworth Dudley
Its: _____

Agreed to by:
LAW OFFICE OF ASTRID E. GABBE, P.A.

_____
By: Astrid Gabbe
Its: _____

RE:     Ainsworth G. Dudley: Statement of Services/Expenses - *Jenisse Long v. Teri Galardi*, AAA
        Arbitration Case No. 01-20-0005-4237

| Date | Description of Services | Time |
|------|-------------------------|------|
| 02-01-21 | Tele-conference with Bourff regarding terms of representation of Long in arbitration proceeding and contingency arrangements and fee | .30 |
| 02-02-21 | Reviewed correspondence from Bourff regarding fee agreement | .10 |
| 02-02-21 | Prepared correspondence to Bourff regarding fee structure and contingency agreements | .10 |
| 02-03-21 | Tele-conferences with Bourff and Gabbe regarding fee for Long arbitration representation | .20 |
| 02-03-21 | Reviewed Long witness list and exhibit list and tele-conference with Bourff regarding same | .50 |
| 02-05-21 | Tele-conference with Gabbe regarding contingency agreements and fee for representation and Long claims | .30 |
| 02-11-21 | Tele-conference with MB regarding notice of appearance and case management conference and reviewed correspondence from AAA regarding same | .20 |
| 02-11-21 | Attended case management conference with AAA, Arbitrator Byrne and Defense counsel | .40 |
| 02-11-21 | Reviewed correspondence from Arbitrator Byrne regarding supplemental discovery production, deposition of Long and continuation of final hearing | .10 |
| 02-11-21 | Reviewed correspondence from Bourff regarding notice of appearance and representation | .10 |
| 03-03-21 | Reviewed file, initial case management order, Motion for and response to summary judgment, discovery and discovery responses, arbitration demand and pre-suit notice | 3.80 |
| 03-03-21 | Reviewed AAA employment rules | 1.10 |
| 03-04-21 | Reviewed correspondence from Tobin regarding Long discovery and Long deposition | .10 |
| 03-22-21 | Reviewed correspondence to and from Gabbe to and from Brodsky re discovery dispute over bank documents and Long deposition and tele-conference with Gabbe regarding same | .30 |
| 05-26-21 | Reviewed correspondence from AAA | .10 |
| 06-03-21 | Reviewed correspondence from Gabbe regarding hearing | .10 |
| 06-03-21 | Reviewed correspondence from Tobin regarding opposition to hearing | .10 |
| 06-03-21 | Reviewed correspondence from Gabbe regarding production of bank documents | .10 |
| 06-03-21 | Reviewed correspondence from Byrne on Long deposition and correspondence from Gabbe regarding same | .10 |
| 06-07-21 | Reviewed correspondence from Gabbe regarding Long deposition | .10 |

| 06-21-21 | Attended deposition of Long and tele-conference with Gabbe regarding deposition preparation | 3.60 |
| 06-22-21 | Reviewed correspondence from Arbitrator Byrne regarding final hearing, completion of discovery and case management conference | .10 |
| 06-22-21 | Reviewed supplemental document production and correspondence to AAA and defense counsel regarding supplementation of discovery | .50 |
| 06-22-21 | Tele-conference with Gabbe regarding availability for final hearing and reviewed correspondence to co-counsel regarding same | .20 |
| 06-23-21 | Reviewed objection to supplemental discovery asserted by Tobin and tele-conference with Gabbe regarding same | .30 |
| 06-23-21 | Tele-conference with Gabbe regarding supplemental documents and response to Tobin objection | .20 |
| 06-23-21 | Reviewed correspondence from Tobin regarding withdrawal of objection to supplementation of record | .10 |
| 06-28-21 | Reviewed correspondence from Gabbe regarding hearing date | .10 |
| 06-28-21 | Tele-conference with Gabbe regarding availability for case management conference and final hearing | .10 |
| 06-28-21 | Tele-conference with Gabbe regarding summary judgment motion on employer liability and reviewed correspondence from Arbitrator Byrne regarding same | .40 |
| 06-29-21 | Prepared correspondence to Bourff regarding Long file and pre-suit notice | .10 |
| 06-29-21 | Tele-conference with Bourff re hearing | .10 |
| 06-30-21 | Reviewed correspondence from Arbitrator regarding hearing date and dispositive motions | .10 |
| 07-01-21 | Reviewed correspondence from Tobin regarding in person hearing | .10 |
| 07-01-21 | Reviewed correspondence from Arbitrator regarding hearing date and live hearing | .20 |
| 07-01-21 | Reviewed correspondence from Tobin regarding summary judgment motion | .10 |
| 07-01-21 | Reviewed correspondence from Gabbe regarding hearing | .10 |
| 07-02-21 | Prepared draft summary judgment motion | 3.10 |
| 07-02-21 | Reviewed supplemental case management order | .10 |
| 07-06-21 | Attended settlement conference | .50 |
| 07-07-21 | Reviewed case management order | .30 |
| 07-08-21 | Reviewed notice of hearing from AAA | .20 |
| 08-11-21 | Reviewed Claimant's documents for exhibit list | 4.50 |
| 08-19-21 | Prepared Claimant's witness list and exhibit list | 2.60 |
| 08-20-21 | Reviewed Defedant's witness list and exhibit list and documents | 1.20 |
| 08-23-21 | Tele-conference with Tobin regarding extension of time to file pre-trial stipulation | .20 |
| 08-23-21 | Reviewed correspondence from Tobin to Arbitrator Byrne regarding extension of time to file pre-trial stipulation | .10 |
| 08-23-21 | Reviewed order from Arbitrator Byrne granting extension of time to file pre-hearing stipulation | .10 |
| 08-27-21 | Prepared stipulations of law and fact | 1.50 |
| 08-31-21 | Conference with counsel regarding pre-hearing stipulations of law and fact | .30 |
| 08-31-21 | Reviewed correspondence from Tobin and prepared revised stipulation and prepared correspondence to Gabbe and Tobin regarding same | .50 |

| 08-31-21 | Tele-conference with Tobin regarding stipulation | .20 |
| 08-31-21 | Reviewed correspondence from Brodsky regarding case management conference and hearing | .10 |
| 08-31-21 | Prepared correspondence to Gabbe regarding pre-hearing conference with Arbitrator and prepared correspondence to Tobin regarding same | .30 |
| 08-31-21 | Reviewed correspondence from Byrne and responded to same, Tele-conference with Brodsky regarding status conference with Byrne | .50 |
| 08-31-21 | Reviewed correspondence from Arbitrator Byrne regarding hearing date | .10 |
|  | Reviewed correspondence from AAA regarding new hearing date and schedule | .10 |
| 09-01-21 | Reviewed correspondence regarding rescheduling status report conference | .10 |
| 09-02-21 | Case Management Scheduling Conference with arbitrator regarding subpoenas, zoom hearing, attendance of witnesses and conflicts | .50 |
| 09-02-21 | Reviewed new case management order | .10 |
| 09-29-21 | Reviewed correspondence from Gabbe regarding Bain verdict and judgment, renewed motion for summary judgment on collateral estoppel grounds, tele-conference with Gabbe regarding verdict and renewal of summary judgment motion | .50 |
| 09-29-21 | Reviewed correspondence from Arbitrator Byrne regarding summary judgment | .10 |
| 10-18-21 | Tele-conference with Gabbe and Defendant's counsel regarding hearing | .10 |
| 10-18-21 | Reviewed correspondence from Arbitrator Byrne regarding hearing date | .10 |
| 10-19-21 | Reviewed correspondence from Tobin regarding hearing | .10 |
| 10-22-21 | Reviewed correspondence from Arbitrator Byrne regarding final hearing | .10 |
| 10-22-21 | Reviewed correspondence from AAA regarding final hearing | .10 |
| 10-22-21 | Reviewed correspondence from Arbitrator Byrne regarding final hearing | .10 |
| 10-25-21 | Reviewed correspondence from Tobin regarding conflict with final hearing | .10 |
| 10-26-21 | Reviewed correspondence from Gabbe regarding final hearing | .10 |
| 10-26-21 | Reviewed correspondence from Arbitrator Byrne regarding case management conference | .10 |
| 10-28-21 | Reviewed correspondence from Tobin regarding case management conference | .10 |
| 10-28-21 | Reviewed correspondence from Arbitrator Byrne regarding case management hearing | .10 |
| 10-28-21 | Reviewed correspondence from Gabbe regarding case management hearing | .10 |
| 10-30-21 | Reviewed correspondence from Gabbe |  |
| 10-30-21 | Reviewed correspondence from AAA and Arbitrator Byrne | .20 |
| 10-31-21 | [deleted] |  |
| 11-14-21 | Prepared proposed statement of fact | 5.60 |
| 11-15-21 | Prepared affidavit for Long for summary judgment | 3.50 |
| 11-16-21 | Reviewed trial transcripts in Espinoza | 6.20 |
| 11-13-21 | Reviewed depositions of Galardi, Adams, Williams and Ennis | 7.00 |
| 11-15-21 | Prepared trial outline and notebook | 3.40 |
| 01-14-22 | Prepared pre-trial stipulation and correspondence to opposing counsel regarding same | .50 |
| 01-14-22 | Reviewed correspondence from CW about planning conference | .10 |

| 01-14-22 | Prepared witness list and exhibit list | 1.80 |
| 01-14-22 | Reviewed Notice of Filing of Bankruptcy Stay and correspondence from defense counsel | .10 |
| 01-14-21 | Reviewed correspondence from Arbitrator Byrne regarding automatic stay and final hearing | .10 |
| 01-18-21 | Reviewed correspondence from AAA regarding stay and scheduled deadlines and hearing | .10 |
| 03-24-22 | Prepared correspondence to Tobin regarding withdrawal | .10 |
| 03-24-22 | Prepared Motion to Withdraw and proposed Order and correspondence to Gabbe regarding filing of same | .60 |
| 03-25-22 | Reviewed correspondence from Tobin regarding withdrawal | .10 |
| 03-28-21 | Tele-conference with Gabbe regarding withdrawal and reviewed correspondence from AAA regarding withdrawal | .20 |
| 03-28-22 | Prepared correspondence to Long regarding withdrawal from AAA arbitration case and correspondence regarding same | .10 |
| 03-29-22 | Reviewed time sheets, removed excessive billing and prepared final statement of purposes of attorneys' lien | |
| | **Time (1/10th Hour Increments)** | **63.70** |
| | **Hourly Rate** | **$500.00** |
| | **Due and Owing** | **$31,850** |

U.S. BANKRUPTCY COURT

MIDDLE DISTRICT

P.O. BOX 1957

MACON, GA 31202